UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANDRE CHANDLER,

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

For Online Publication Only

**MEMORANDUM & ORDER**
15-cr-00131 (JMA)

FILED
CLERK

7/10/2026 10:25 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

Petitioner Andre Chandler, proceeding pro se, moves to vacate, set aside, or correct his

conviction and sentence pursuant to 28 U.S.C. § 2255. (See ECF No. 136 (the "Petition" or

"Pet.")). For the reasons set forth below, the Petition is DENED.

**I.    BACKGROUND**

On October 7, 2016, after a two-week trial at which Petitioner was represented by counsel

Kevin Keating, a jury convicted Petitioner of:

- Count 1: Conspiracy to distribute cocaine base and heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C);

- Count 2: Discharge of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii);

- Counts 3, 4, and 5: Being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

- Count 6: Possession with intent to distribute cocaine base, heroin, oxycodone and hydrocodone, in violation of 21 U.S.C. §§ 841(a)(1) and 851(b)(1)(C); and

- Count 7: Possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

(ECF No 101; ECF No. 125.) The evidence at trial showed that Petitioner sold large amounts of

controlled substances in Hempstead, New York. (See, e.g., Trial Transcript, ECF No. 94 ("Tr."),

622:16–632:22.) In December 2014, while Petitioner was on probation, he shot a rival twice with

1

a semiautomatic pistol.  (See, e.g., Tr., 797:3–802:24.)  After the shooting, the U.S. Probation Department searched Petitioner's residence and recovered, inter alia, a loaded semiautomatic pistol hidden under the mattress of a four-year old child. (Tr., 237:7–21; 243:6–21.)

On June 7, 2018, the undersigned sentenced Petitioner to a total of 366 months custody. (Pet. at 3; Sentencing Transcript, ECF No. 134 ("Sent. Tr.").)  The undersigned imposed a sentence of 150 months on Counts 1, 6, and 7; a concurrent sentence of 120 months on Counts 3, 4, and 5; and a consecutive sentence of 204 months on Count 2.[1]  (Sent. Tr., 32:14–25.)  The undersigned additionally imposed a consecutive sentence of 12 months on Petitioner's violation of his supervised release.  (Sent. Tr., 33:1–3.)

Petitioner, represented by counsel Jamesa Drake, appealed his conviction and sentence. Petitioner made three principal arguments on appeal.  (See Br. for Def.–Appellant, United States v. Chandler, No. 18-1841 (2d Cir. Nov. 5, 2015), ECF No. 81 ("Pet. Appellate Br.").)  First, he argued this Court erred by admitting testimony from a cooperating witness about Mr. Chandler's trial strategy, which he claimed violated his Sixth Amendment right to counsel under Weatherford v. Bursey, 429 U.S. 545 (1977).  (See Pet. Appellate Br. at 12–31.)  Second, he argued this Court erred by failing to suppress evidence seized by the Probation Department from Mr. Chandler's home and car because the Probation Department lacked reasonable suspicion for the search.  Id. at 31–50.    Third, he argued this Court erred by failing to suppress evidence seized from Mr. Chandler's home and car because the Probation Department impermissibly acted as a "stalking horse" for the NYPD, which lacked probable cause for the search.  Id. at 50–54.

In addition to the brief filed by his counsel, Petitioner filed a supplemental appellate brief pro se, in which he argued: (1) this Court erred by admitting evidence obtained without reasonable

---

[1] As explained in the PSR and the second addendum to the PSR, both adopted by the undersigned at sentencing, the Guidelines range on Counts 1, 3, 4, 5, 6, and 7 was 120–150 months and the Guidelines range for Count 2 was 120 months.  (ECF No. 111; ECF No. 120; Sent. Tr., 4:5–16.)

suspicion, via an unduly suggestive photo array, and without proper warnings under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966); (2) insufficient evidence supported his conspiracy conviction; (3) this Court should have excluded a Drug Enforcement Administration analyst's trial testimony as a violation of the Confrontation Clause under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); (4) the testimony of three eyewitnesses should have been suppressed; (5) the Probation Office miscalculated his sentencing range under the U.S. Federal Sentencing Guidelines (the "Guidelines"); and (6) the sentence imposed by the undersigned was substantively unreasonable. (Supp. Br. for Def.–Appellant, <u>United States v. Chandler</u>, No. 18-1841 (2d Cir. Nov. 5, 2015), ECF No. 158 ("Pet. Supp. Appellate Br.")).

On December 27, 2022, the Second Circuit affirmed Petitioner's conviction and sentence. <u>See</u> <u>United States v. Chandler</u>, 56 F.4th 27 (2d Cir. 2022). Petitioner further appealed to the United States Supreme Court, which denied certiorari on April 24, 2023. <u>Chandler v. United States</u>, 143 S. Ct. 1791 (2023).

Petitioner filed the instant petition, <u>pro se</u>, on April 19, 2024. (Petition, at 18.[2]) The Government filed an opposition, (ECF No. 141 ("Opp.")), and Petitioner filed a reply, (ECF No. 146 ("Reply")).

## II.    LEGAL STANDARD

Section 2255 permits a person held in federal custody to move to vacate, set aside, or correct their sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To merit relief under Section 2255, a habeas

---

[2] For ease of reference, this opinion uses ECF page numbers, rather than party-assigned page numbers, for citations to <u>pro se</u> filings in this case.

3

petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (cleaned up).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (cleaned up). One such rule is the "mandate rule," which prevents a petitioner from collaterally attacking his sentence when he has already tried and failed to attack it on the same grounds on direct appeal. See id. at 53; United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (per curiam). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53. In other words, "a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal[.]" Id. at 55 (internal quotation marks omitted). A habeas petitioner may not avoid this bar merely by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal." United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009) (per curiam) (quoting Riascos-Prado v. United States, 66 F.3d 30, 34 (2d Cir. 1995)).

Separately, if a habeas petitioner could have brought a claim on direct appeal but failed to do so, the claim is barred as procedurally defaulted. See, e.g., United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.") There are limited exceptions to this "procedural default" rule. A petitioner may premise a collateral attack on an argument he failed to raise on appeal only if he establishes either: "(1) cause for the procedural

4

default and ensuing prejudice or (2) actual innocence." Id. at 231; see also Viera v. United States, 832 F. Supp. 2d 222, 227 (E.D.N.Y. 2011) (explaining that "cause" must be attributable to "something external to the petitioner" and that "actual innocence" is only demonstrated if the petitioner proves that, "in light of all admissible evidence, 'it is more likely than not that no reasonable juror would have convicted him'" (quoting Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004))). One form of "cause" that can overcome procedural default is if the petitioner received constitutionally ineffective assistance of counsel. See Yick Man Mui, 614 F.3d at 55 (citing Massaro v. United States, 538 U.S. 500, 508–09 (2003)). Accordingly, a petitioner may raise a claim of ineffective assistance of counsel for the first time in a Section 2255 petition. See Massaro, 538 U.S. at 504.

Courts "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Kravitz v. Purcell, 87 F.4th 111, 119 (2d Cir. 2023) (quoting Publicola v. Lomenzo, 54 F.4th 108, 111 (2d Cir. 2022)).

### III.    DISCUSSION

Petitioner asserts seven grounds for relief that fall into five categories. He contends that: (1) the trial evidence was insufficient to support his conviction, (2) his conviction and sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000), (3) this Court made erroneous evidentiary rulings, (4) this Court sentenced him according to an improper application of the Sentencing Guidelines, and (5) he received ineffective assistance of counsel. The claims in the first four categories either were fully litigated and decided on direct appeal or are procedurally defaulted. The ineffective assistance of counsel claim fails on the merits. Accordingly, and as explained further below, none of the asserted grounds merit relief under Section 2255.

A.  **Claims that are Procedurally Barred or Precluded by the Mandate Rule**

1.  **Sufficiency of the Evidence**

Ground Two in support of the Petition claims that the Government failed to present the jury with evidence sufficient to convict him of conspiracy to distribute cocaine base (Count 1) and possession with intent to distribute cocaine base (Count 6).  (Pet. at 7.)  The first claim is barred by the mandate rule; the second claim is procedurally defaulted.  These claims are also substantively meritless.

First, Petitioner argues that the Government failed to prove the existence of a conspiracy because the only possible co-conspirators were either paid informants, cooperating witnesses, or participants in buyer-seller agreements from which a jury could not reasonably infer an agreement to distribute.  (Id.; see also Reply at 12–14.)  Petitioner made these same arguments before the Second Circuit in his pro se supplemental brief.  (See Pet. Supp. Appellate Br. at 2 (arguing that "Pamela Heath was a paid informant" whose testimony should have been struck, and that "Ramel Floyd said he made buys/transactions (not conspiracy)").)  The Second Circuit "carefully considered these arguments" and declined to reverse Petitioner's conspiracy conviction.  Chandler, 56 F.4th at 44 n.12.  As the Second Circuit summarized, the prosecution called three of Chandler's former customers as witnesses to prove the charged drug conspiracy, including Ramel Floyd, who "testified that between July 2014 and October 2014, he purchased crack cocaine and heroin approximately twice a day from Chandler in quantities sufficient to resell those drugs to other customers."  Id. at 34; (see also Tr., 703:16–21 (Floyd testifying that he bought crack cocaine from the defendant twice a day for the purpose of reselling it).)  Petitioner may not here re-litigate this issue that has already been raised and decided on direct appeal.  Moreover, even if the mandate rule somehow did not bar this claim, this claim is also substantively meritless.  See United States v. Hawkins, 547 F.3d 66, 75–76 (2d Cir. 2008) (upholding a drug conspiracy conviction based on

6

evidence about the mutual trust and regular dealings between the buyer and seller, which was sufficient for a reasonable jury to infer a conspiracy to distribute).

Second, Petitioner argues that the Government failed to prove that he was found to be in possession of cocaine base—also known as crack cocaine—as opposed to powder cocaine or any other type of drug.  (Pet. at 7.)  Petitioner did not raise this argument on direct appeal—including in his pro se supplemental brief.  Petitioner does not present any reason for his failure to do so, nor does he demonstrate actual innocence.  Petitioner's claim that his conviction was unsupported by evidence because the Government presented only "circumstantial evidence" and "impermissible speculation" that he possessed cocaine base is meritless.  (See Reply at 8.)  The evidence presented at trial that Petitioner possessed cocaine base was overwhelming, and the jury convicted him on that basis.  (See, e.g., Tr., 631:19–632:11 (witness cooked powder cocaine into crack cocaine with Petitioner); Tr., 682:21–683:1; 705:17–706:12 (witness bought crack cocaine from Petitioner); Tr., 914:6–11; 920:2–24 (witness was offered crack cocaine by Petitioner); Tr., 1445:17–19 (jury foreperson announcing guilty verdict with respect to possession of cocaine base with the intent to distribute it).)  Petitioner points out that chemical tests performed by the government's witness on certain bags that appeared to contain crack cocaine did not identify cocaine base.  (See Reply at 8 (citing Tr., 520:12–17)).  However, "[l]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction." United States v. Wyche, No. 18-CR-561, 2023 WL 6890112, at *9 (E.D.N.Y. Oct. 19, 2023) (quoting United States v. Bryce, 208 F.3d 346, 353 (2d Cir. 1999)).  Accordingly, despite the lack of a positive chemical test, the evidence at trial was still sufficient to support the jury's finding that Petitioner possessed cocaine base. Accordingly, this claim is procedurally defaulted.

## 2. **Apprendi**

Ground Three of the Petition claims that the Government failed to present the jury with evidence of drug quantity and type sufficient for Petitioner to be sentenced under 21 U.S.C. § 841(b)(1)(C) on Counts 1, 6, and 7. (Pet. at 8.) Citing Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, Petitioner argues that drug type and quantity are essential elements of the charge because they affect sentencing and thus must be found by the jury beyond a reasonable doubt. (Reply at 9.)

Petitioner did not raise this argument at his sentencing or on direct appeal—including in his pro se supplemental brief—and does not present any reason for his failure to do so, nor does he allege any facts that demonstrate actual innocence.[3] Accordingly, this claim is procedurally defaulted.

Even if it were reviewable, the Apprendi claim is meritless because the Court imposed a total sentence of 150 months on Counts 1, 6, and 7, which is below the 20-year statutory maximum contained in 21 U.S.C. § 841(b)(1)(c). (Sent. Tr., 32:14–22; see also id., 27:10–15 (Government sought a combined sentence of 150 months on Counts 1, 3, 4, 5, 6, and 7).) In Apprendi, the Supreme Court held that any fact (other than a prior conviction) used to enhance a sentence beyond the relevant statutory maximum must be found by a jury. 530 U.S. at 490; see also United States v. Thomas, 274 F.3d 655, 660 (2d Cir. 2001) ("[T]o impose a sentence above the statutory maximum for an indeterminate quantity of drugs, . . . the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury.") This doctrine has no application where, as here, the district court imposes a sentence below the statutory

---

[3] Regarding actual innocence, Petitioner claims that the evidence presented at trial was insufficient to support his conviction of Count 1 because the drug type "cocaine base" was not proven beyond a reasonable doubt, in violation of Apprendi. He further claims that, because his conviction on Count 2 was predicated on his conviction on Count 2, he has demonstrated actual innocence on both counts. (Reply at 16.) This argument is based on Petitioner's erroneous understanding of Apprendi, which is inapplicable to this case for reasons discussed below.

8

maximum.   See United States v. McLeod, 251 F.3d 78, 82 (2d Cir. 2001) ("Apprendi is inapplicable to Guidelines calculations that do not result in a sentence on a single count above the statutory maximum for that count."); United States v. Cordoba-Murgas, 422 F.3d 65, 71 (2d Cir. 2005) (explaining that district courts retain the "authority to make factual findings as to drug quantity for use in sentencing, so long as the resulting sentence does not exceed the applicable statutory maximum"); accord United States v. Perez-Ruiz, 353 F.3d 1, 15 (1st Cir. 2003) ("Where, as here, a defendant is accused of distributing heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 841(a), the default statutory maximum derives from 21 U.S.C. § 841(b)(1)(C). . . . That makes the default statutory maximum 20 years."). Accordingly, "the type and quantity of drugs involved in a violation of § 841(a) must be submitted to the jury 'as an element . . . only in cases where the Government will seek a sentence above' the statutory maximum imposed by § 841(b)(1)(C)." United States v. Requena, 980 F.3d 30, 49 (2d Cir. 2020) (quoting Thomas, 274 F.3d at 660 & nn.2–3). In this case, the Government sought, and the Court imposed, a sentence below the statutory maximum on Counts 1, 6, and 7. Accordingly, there was no Apprendi violation.

### 3. Suppression and Evidentiary Rulings

Ground Four of the Petition claims that the district court erred in failing to suppress evidence obtained: (1) during an allegedly unconstitutional search of Petitioner's residence, (2) using an unlawful photo array, (3) from an eyewitness whose testimony was allegedly unreliable due to the influence of drugs, and (4) from a Drug Enforcement Administration ("DEA") analyst whose testimony allegedly violated the Confrontation Clause. (Pet. at 10.)

These claims were all raised and rejected during Petitioner's direct appeal. (See Pet. Appellate Br. at 31–51 (arguing that the district court erred by admitting evidence obtained by the Probation Department and the NYPD during search of Petitioner's home and vehicle); Pet. Supp.

9

Appellate Br. (challenging, inter alia, "unreasonable suspicion of search," "unduly suggestive photo array lineup," "eyewitness statements to shooting should have been suppressed . . . [due to] admission of being under the influence," and "DEA Agent Herrerra testimony should have been excluded from trial (Crawford issue)")); Chandler, 56 F.4th at 43 (rejecting the claim that search of Petitioner's home and vehicle lacked reasonable suspicion); id. at 44 n.12 (rejecting the arguments raised in Petitioner's pro se supplemental appellate brief). Accordingly, these claims are barred by the mandate rule. See Yick Man Mui, 614 F.3d at 53.

As Ground Five in support of his Petition, Petitioner claims that the district court violated his Fifth and Sixth Amendment rights by admitting testimony from a cooperating witness about statements Petitioner made about his intended trial strategy to the witness while they were incarcerated together. (Pet. at 12.)

This issue was already extensively litigated and was conclusively decided on direct appeal. Upon request of Petitioner's defense counsel, this Court held a Massiah hearing to determine whether the cooperating witness was acting as a government agent at the time that Petitioner disclosed trial strategy to him. See Massiah v. United States, 377 U.S. 201 (1964) (holding that the Sixth Amendment bars the government from interrogating, even through an informant, a person who is under indictment and represented by counsel). After the hearing, the Court concluded that the cooperating witness was not yet cooperating with the government during the period when he and Petitioner were incarcerated together, and so suppression of his testimony was not warranted under the Sixth Amendment. (ECF No. 69); see also Chandler, 56 F.4th at 33–34 (describing the district court's Massiah hearing). On appeal, Petitioner argued that the witness's testimony nevertheless violated his rights under Weatherford v. Bursey. 429 U.S. 545 (1977) (suggesting that a Sixth Amendment violation may exist when a government informant intentionally intrudes on a defendant's lawyer-client relationship and subsequently discloses otherwise privileged

10

information to the prosecution).  The Second Circuit rejected this claim, holding that there was no Weatherford violation because the relevant witness began to cooperate with the prosecution only after Petitioner voluntarily gave him information about his intended trial strategy.  Chandler, 56 F.4th at 38–41.  Petitioner may not here relitigate this claim.  See Yick Man Mui, 614 F.3d at 53.

### 4.   Improper Guidelines Calculation

Ground Seven of the Petition claims that the district court erred at sentencing by relying upon a Pre-Sentence Investigation Report ("PSR") that included incorrect calculations of both his offense level and his criminal history under the Sentencing Guidelines.  (Pet. at 14.)

The PSR, as amended, calculated an adjusted offense level of 26 and a criminal history score of 16.  (ECF No. 111 at 21; ECF No. 120 at 3.)  Accordingly, the PSR determined that Petitioner's Guidelines range for Counts 1, 3, 4, 5, 6, and 7 was 120 to 150 months, which by statute would have to run consecutively with a mandatory minimum sentence of 120 months for Count 2.  (ECF No. 120-1 at 3); see also U.S.S.G. § 2K2.4(b) (2016) (setting the guideline sentence for 18 U.S.C. § 924(c) convictions at "the minimum term of imprisonment required by statute").  At sentencing, the undersigned adopted the PSR, the second addendum to the PSR, and the Guidelines calculations contained therein.  (Sent. Tr., 4:5–16.)  The undersigned imposed sentences within the Guidelines ranges for Counts 1, 3, 4, 5, 6, and 7 and imposed an above-guidelines sentence of 204 months for Count 2.  (Sent. Tr., 31:23–2).

### a.      *Offense Level*

Petitioner contends that the PSR miscalculated his offense level, which he claims should have been 16, rather than 26.  (Pet. at 14.)  In support of this claim, he points out that the original PSR initially miscalculated his offense level based on a higher amount of cocaine, oxycodone, and hydrocodone than the amount that was proven at trial.  (Pet. at 14; Reply at 10–11; see also ECF No. 111 at 8; ECF No. 120-1 at 1.)

11

This claim is barred by the mandate rule because it was considered and rejected by the Second Circuit on direct appeal.  (See Pet. Supp. Appellate Br. at 4 ("Sentencing exceeded guidelines range . . . due to the wrong calculations of items that were not considered narcotics, extra weight was added")); Chandler, 56 F.4th 27, 44 n.12.

The claim also fails on the merits.  Petitioner is correct that the PSR's initial calculation contained these errors.  However, thanks to objections made by Petitioner's defense counsel, these errors were corrected in an addendum to the PSR.  (Compare ECF No. 111 (original PSR) and ECF No. 119 (first PSR addendum), with ECF No. 120 at 1 (second PSR addendum adjusting the amount of cocaine from 73.52g to 4.5g, the amount of oxycodone from 21.815g to 0.22g, the amount of hydrocodone from 3.353g to 0.08g, and accordingly changing the defendant's adjusted offense level from 33 to 26).)  To the extent that Petitioner argues that the PSR, as amended, also incorrectly applied the drug equivalency table found in § 2D1.1 of the Sentencing Guidelines, (see Reply at 9–10), this Court has reviewed the PSR and the Guidelines and concludes that no such error occurred.  See ECF No. 120 at 1; United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1, cmt. 8(D) (2016).  At sentencing, the undersigned relied upon the correctly calculated adjusted offense level of 26.  (See id.; Sent. Tr., 4:5–16.)  Accordingly, Petitioner's claim concerning his offense level fails.

### b.    *Criminal History*

Petitioner further contends that the PSR miscalculated his criminal history and that this error affected his Guidelines calculation.  The amended PSR, which this Court adopted, determined that Petitioner fell within criminal history Category VI, which applies to defendants with 13 or more criminal history points.  (See ECF No. 120.)  Petitioner contends that he should instead have been classified as Category V, which applies to defendants with 10–12 criminal history points.  (Reply at 14–15); see also U.S.S.G. § 5A (2016) (sentencing table).  Petitioner

argues that the PSR wrongly assigned him 3 criminal history points based on two offenses he committed at the age of seventeen—unauthorized use of a motor vehicle in the third degree and disorderly conduct—for which he was sentenced to "time served" after spending 406 days in jail. (See Pet. at 14; Reply at 14–15.) Additionally, Petitioner argues that the PSR wrongly assigned him 1 point based on his prior conviction for attempted criminal possession of a controlled substance in the seventh degree, for which no incarceratory sentence was imposed. (Pet. at 14; Reply at 15.)

Petitioner's claims about his criminal history were not raised on direct appeal and, as such, he would have to overcome procedural default to succeed on these claims. Petitioner, however, also raises ineffective assistance of counsel claims premised on the same arguments concerning his criminal history, discussed further infra. Ultimately, Petitioner's claims concerning his criminal history—whether brought as standalone or ineffective assistance claims—fail on the merits.

The Court concludes that the PSR did indeed miscalculate Petitioner's criminal history, but that Petitioner did not suffer any prejudice because of this error. As explained below, Petitioner should have been assigned only 13 criminal history points, not the 16 points that were identified in the PSR. However, because the Guidelines assign individuals with 13 or more points to Category VI, this error did not affect the Guidelines range that applied to Petitioner at the time of sentencing. See U.S.S.G. § 5A (2016).

Citing § 4A1.2(d)(1) and § 4A1.2(e)(1) of the Sentencing Guidelines, the PSR erroneously assigned to Petitioner 3 criminal history points based on two prior convictions for which he was sentenced to time served after spending 406 days in jail. (See ECF No. 111 at 13–14.) Section 4A1.2(d)(1) of the Guidelines provides that, for offenses committed before the age of eighteen: "If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one

13

year and one month, add 3 points[.]" Petitioner claims that this provision does not apply to "time served" sentences. (Pet at 14; Reply at 14–15.) That is incorrect; for the purpose of calculating criminal history points, a sentence of "time served" is treated as "an unambiguous pronouncement of a specific term of imprisonment—the amount of time actually served." United States v. Constantine, 762 F. App'x 16, 20 (2d Cir. 2019) (quoting United States v. D'Oliveira, 402 F.3d 130, 132 (2d Cir. 2005)). However, the PSR's calculation was still in error because "a sentence of 'time served' does not exceed the statutory maximum," even if a defendant in fact spent more than that amount of time in pre-trial detention. United States v. Allen, 519 F. App'x 727, 731 (2d Cir. 2013). Petitioner's two relevant convictions bore statutory maximums of 364 days and 15 days, respectively, so the maximum sentence on those convictions could not exceed 13 months even if imposed consecutively. See N.Y. Penal Law §§ 165.05; 240.2; 70.5. Section 4A1.2(e)(1) of the Guidelines likewise concerns prior sentences of imprisonment exceeding one year and one month and, in any event, does not apply to offenses committed before the age of eighteen. See U.S.S.G. § 4A.2(e)(4) (2016). Accordingly, the Court concludes that the Petitioner should have received no criminal history points for these prior convictions.

However, the PSR was correct to assign 1 point based on Petitioner's prior conviction for attempted possession of a controlled substance, for which Petitioner was fined $500 on February 7, 2008. (See ECF No. 111 at 17.) Under § 4A1.1(c) and § 4A1.2(e)(2) of the Guidelines, a defendant receives 1 criminal history point for any prior sentence that was imposed "within ten years of the defendant's commencement of the instant offense," unless the sentence is for sixty or more days of incarceration. Defendant does not contest that the relevant sentence was imposed within ten years of the instant offense. Instead, he argues that § 4A1.1(c) and § 4A1.2(e)(2) do not apply where the sentence imposed was a financial penalty rather than an incarceratory period. (Pet. at 14; Reply at 15.) This is wrong. The Sentencing Guidelines' application notes make clear

14

that, whereas § 4A1.1(a) and § 4A1.1(b) apply to confinement sentences of at least 13 months and at least 60 days, respectively, § 4A1.1(c) applies to "all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house." U.S.S.G. § 4A1.1, cmt. background (2016); see also, e.g., United States v. Sanders, 205 F.3d 549, 551 (2d Cir. 2000) ("As a general rule, § 4A1.1(c) of the Sentencing Guidelines provides that any misdemeanor conviction that carries a fine . . . results in a single criminal history point.").

Correctly calculated without the 3 points associated with his "time served" sentence, Petitioner should have been assigned a criminal history score of 13. This still puts him in Category VI, meaning that his Guidelines range was not affected by the error. See U.S.S.G. § 5A (2016). Accordingly, Petitioner has not shown that the mistake in his Sentencing Guidelines calculation amounts to an "error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco, 208 F.3d at 30; cf. Molina-Martinez v. United States, 578 U.S. 189, 201, 204 (2016) (holding, in the context of Federal Rule of Criminal Procedure 52(b), that a defendant demonstrates prejudice "by pointing to the application of an incorrect, higher Guidelines range[,]" because such a showing is sufficient to demonstrate "a reasonable probability that the district court would have imposed a different sentence under the correct range") (emphasis added).[4] Here, Petitioner has not shown that he was prejudiced by the PSR's error because the error did not result in the application of a higher Guidelines range.[5]

---

[4] To the extent that Petitioner claims he was wrongly sentenced as a career offender, that claim is incorrect. Although the original PSR did classify him as a career offender, upon the objection of Petitioner's defense counsel, an addendum to the PSR removed the career offender notation in an addendum to the PSR before sentencing. (Compare ECF No. 111 at 11, with ECF No. 119 at 1.)

[5] Similarly, as discussed infra, Petitioner cannot show a reasonable probability that he would have received a different sentence for purposes of his related ineffective assistance claim.

15

**B.** <u>**Ineffective Assistance of Counsel**</u>

A petitioner claiming ineffective assistance of counsel must show both: (1) that counsel's representation "fell below an objective standard of reasonableness[,]" measured against "prevailing professional norms," and (2) that this "deficient performance prejudiced the defense[,]" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88, 694 (1984); <u>see also</u> <u>Gonzalez v. United States</u>, 722 F.3d 118, 130 (2d Cir. 2013).

Regarding the first <u>Strickland</u> factor, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687.  Courts apply a "'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." <u>Bell v. Cone</u>, 535 U.S. 685, 702 (2002) (quoting <u>Strickland</u>, 466 U.S. at 689).  For example, "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." <u>Gibbons v. Savage</u>, 555 F.3d 112, 122 (2d Cir. 2009) (citing <u>Strickland</u>, 466 U.S. at 690–91).  Simple disagreement with counsel's trial strategy is not enough on its own to support a claim for ineffective assistance of counsel. <u>See</u> <u>United States v. Sanchez</u>, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant . . . may not claim ineffective assistance of counsel merely because . . . he thinks counsel's trial strategy was inadequate.").  Certainly, "failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001) (internal quotation marks and citations omitted).

Regarding the second Strickland factor, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. On the other hand, a petitioner need not show that "counsel's deficient conduct more likely than not altered the outcome in the case." Id. Rather, he must show "a probability sufficient to undermine confidence in the outcome" that the result would have been different if not for his counsel's unprofessional errors. Id. at 694.

Petitioner asserts that the representation provided by his defense counsel was deficient in several ways. For reasons explained below, the Court finds that Petitioner received representation that was well within the "the wide range of reasonable professional assistance" and, moreover, that Petitioner has failed to show that he was prejudiced by any deficiencies in his representation. Bell, 535 U.S. at 702.

### 1. Advocacy at Trial and Sentencing

As Ground One in support of his petition, Petitioner claims that his defense counsel "failed to elucidate the fact that the government failed to prove every element" of the crimes charged. (Pet. at 6.) Specifically, he claims that his attorney failed to argue at trial: (1) that the Government did not prove the existence of a co-conspirator; (2) that the Government did not prove possession of cocaine base, as opposed to cocaine; (3) that it was improper for the Government to bring three separate charges (namely, Counts 1, 6, and 7) based on a single seizure of drugs; and (4) that the Government did not prove drug type and quantity, "where drug quantity and type triggered an increased sentence under statutory scheme and affected outcome[.]" (Pet. at 6; see also Reply at 5.)

These arguments are all without merit. First, Keating vigorously advocated on Petitioner's behalf throughout trial. For instance, Keating cross-examined Ramel Floyd, an alleged co-conspirator, about the leniency he received in exchange for serving as a cooperating witness, (Tr.,

726:3–730:5), and the extent of his dealings with Petitioner, (Tr. 748:1–6). Another example: in support of his claim that counsel failed to expose gaps in the Government's evidence regarding Petitioner's possession of cocaine base, Petitioner points to testimony from a NYPD Police Laboratory analyst about a "lab report [that] verified [the] substance to be cocaine." (Pet. at 6; see also Reply at 11.) Keating, however, carefully cross-examined that analyst, ensuring that the jury knew that her chemical analysis did not identify cocaine base. (Tr., 520:7–18. ("[Keating:] [T]hose items that appear to be rock-like substances in a bag, you analyzed those to determine whether they were controlled substances, correct? [Witness:] Yes, that's correct. [Keating:] And they were not? [Witness:] That is correct.")) Second, Petitioner's claim that Keating should have objected to the Government's decision to bring three separate charges based on a single seizure of drugs is unavailing. For one thing, Count 1 charged conspiracy under 21 U.S.C. § 846, which is a different crime from the substantive offense under § 841(a) charged in Counts 6 and 7. See United States v. Felix, 503 U.S. 378, 389 (1992). For another, the jury convicted Petitioner on Counts 6 and 7 based on different drug seizures. (See Tr., 1411:11–13 (describing the government's allegation that the drugs charged in Count 6 were recovered from Petitioner's car); Tr., 1419:4–6 (describing the government's allegation that the heroin charged in Count 7 was recovered from Petitioner's home).) Finally, the Court understands Petitioner's claim about drug quantity and type as a reference to the Apprendi doctrine, which is inapplicable in this case for reasons explained above. Accordingly, Petitioner has not demonstrated that his counsel's trial advocacy fell outside the "wide range of reasonable professional assistance[.]" Bell, 535 U.S. at 702.

Petitioner additionally claims that, at sentencing, his attorney failed to object to errors in the PSR's calculation of Petitioner's criminal history. (Pet. at 6; Reply at 5–6.) At sentencing, Petitioner was represented by counsel Florian Miedel, no longer by Keating. (See ECF No. 114 at 11.) As explained supra, the PSR indeed miscalculated Petitioner's criminal history points, but

18

the error did not affect Petitioner's Guidelines range because he would still fall within criminal history Category VI. Accordingly, Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different if counsel had objected to this error in the PSR. See Strickland, 566 U.S. at 694.

### 2. Plea Advice

Ground Six of the Petition claims that Keating misadvised Petitioner of the Sentencing Guidelines that would apply if he were to plead guilty, thereby "compell[ing] Mr. Chandler to go to trial." (Pet. at 13.) In his reply brief, Petitioner states that he "urged counsel to seek a 10-year plea, but counsel insisted it would be impossible to receive anything under 30 years because defendant was a career offender." (Reply at 5.) Petitioner contends that counsel's advice was based on a misapprehension that: (1) Petitioner qualified as a career offender under the Guidelines, and (2) Petitioner's criminal history put him in Category VI under the Sentencing Guidelines when, correctly calculated, his criminal history should have put him in Category V. (Id. at 5–6; see also id. at 18 ("[D]efendant suggested a plea of 10 years to counsel, who failed to litigate such due to belief defendant was a career offender and category VI.") Petitioner argues that, "[w]ere if not for this misadvice of counsel[, he] would have rightfully pled," in which case he may have received credit for accepting responsibility or even the dismissal of aggravating charges. (Pet. at 13.) This claim fails both prongs of the Strickland test.

#### a.   *Counsel's Plea Advice Was Not Deficient*

Regarding the first Strickland prong, Petitioner has not shown that his counsel's plea advice was deficient. As an initial matter, Keating was correct to advise Petitioner that his criminal history would put him in Category VI under the Sentencing Guidelines, for reasons explained supra.

As for Keating's purported advice that "it would be impossible to receive anything under 30 years because defendant was a career offender," Keating's conclusion that Petitioner qualified

as a career offender was sound legal advice up until August 1, 2016. As Miedel explained in objections to the PSR, Petitioner would be classified as a career offender for sentencing purposes only if his 2010 conviction for attempted assault in the second degree qualified as a "crime of violence" within the scope § 4B1.2(a) of the Sentencing Guidelines. (See ECF No. 114, at 2.) Until August 1, 2016, the Sentencing Commission's definition of "crime of violence" contained two clauses and was identical to the definition contained in the Armed Careers Criminal Act of 1984 ("ACCA"). U.S.S.G. § 4B1.2(a) (2015); 18 U.S.C. § 924(e). A conviction qualified under the first clause if it "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 4B1.2(a)(1) (2015). A conviction qualified under the second clause if it was for "burglary of a dwelling, arson, or extortion, involves use of explosives," or if it fell within a "residual clause" for convictions that "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." Id. § 4B1.2(a)(2) (2015). Under this definition, Petitioner's 2010 conviction would have qualified as a crime of violence under § 4B1.2(a)(2)'s residual clause. (See ECF No. 114, at 3–4 (citing Wiggan v. United States, No. 3:15-CV-447, 2016 WL 4179838, at *10–14 (D. Conn. Aug. 5, 2016), in which a district court found that an analogous conviction for assault on a peace officer involving unintentional injury under Connecticut law qualified as a crime of violence under the ACCA's residual clause, but not under the ACCA's "elements" clause)); see also United States v. Wiggan, 530 F. App'x 51, 58 (2d Cir. 2013) (determining, prior to Johnson v. United States, 576 U.S. 591 (2015), that analogous crime under Connecticut law qualified as a violent felony under the ACCA).

On August 1, 2016, the Sentencing Commission removed this residual clause and revised the second clause of § 4B1.2(a) to cover convictions only for "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined

in 18 U.S.C. § 841(c)." U.S.S.G. Supplement to the 2015 Guidelines Manual (Aug. 1, 2016); U.S.S.G. § 4B1.2(a)(2) (2016).[6] As Miedel successfully argued in his objections to the PSR (dated September 25, 2017), Petitioner's 2010 conviction did not fall within either clause of the revised § 4B1.2(a). (See ECF No. 114, at 2–4 (citing Wiggan, No. 3:15-CV-447, 2016 WL 4179838, at *10–14); ECF No. 119 at 1 (PSR addendum agreeing with Keating's analysis and dropping the "career offender" classification and associated sentencing enhancement).) Accordingly, due to revised sentencing guidelines, Petitioner was no longer considered a career offender and had a lower Guidelines range.

The Petition provides no information about when, why, or in what context Keating advised Petitioner that he should expect to be sentenced as a career offender. Keating's representation of Petitioner began on August 4, 2014, two years before the above-described change to the Guidelines was implemented. (See ECF No. 141-1 ¶ 4.) Petitioner has not provided the Court with any basis to conclude that Keating provided this plea advice after the Guidelines change—which was issued in August 2016, after the filing of the superseding indictment and only two months before the start of Petitioner's trial—rather than during the two years of representation that preceded the change. Accordingly, Petitioner has not met his burden of showing that Keating's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

### b.     Petitioner Was Not Prejudiced by Counsel's Plea Advice

Even assuming arguendo that Keating's plea advice was deficient, Petitioner has not demonstrated that he was prejudiced by that advice. Supreme Court precedent establishes that,

---

[6] This amendment was implemented in response to the 2015 Supreme Court case Johnson v. United States, 576 U.S. 591 (2015). See U.S.S.G. Supplement to the 2015 Guidelines Manual (Aug. 1, 2016), at 2. In Johnson, the Supreme Court held unconstitutional any increase to a defendant's statutory minimum sentence based on ACCA's residual clause, which the Court found to be unconstitutionally vague. The Sentencing Commission's decision to remove the residual clause from the advisory Guidelines was not mandated by Johnson, as the Supreme Court made clear in Beckles v. United States, 580 U.S. 256 (2017), which held that Johnson did not apply to the residual clause in § 4B1.2 of the Sentencing Guidelines because the Guidelines are advisory, not mandatory.

21

"[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Missouri v. Frye, 566 U.S. 134, 147 (2012). A petitioner who asserts that his counsel's deficient advice led him to stand trial instead of accepting a plea offer must show:

> [T]hat but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 566 U.S. 156, 164 (2012); see also id. at 168 ("If no plea offer is made, . . . the issue raised here simply does not arise."). The Court need not accept a petitioner's "self-serving, post-conviction statements that [they] would have pleaded guilty if properly advised" unless his statements are supported by some objective, credible evidence. United States v. Belfiore, 473 F. Supp. 3d 72, 90 (E.D.N.Y. 2020) (internal citations omitted); see also United States v. Frederick, 526 F. App'x 91, 93 (2d Cir. 2013). To merit consideration, the petition must present "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." Gonzalez, 722 F.3d at 131.

Petitioner's claim does not come near satisfying this burden. Petitioner says that he would "rightfully have pled" if his counsel had managed to negotiate a "10-year plea." (Pet. at 13.) This self-serving statement does not constitute credible evidence that he would have accepted, or that the Court would have approved, such a plea. Crucially, Petitioner does not offer any evidence that a "10-year plea" was ever on the table or would have been offered by the Government under any circumstances. There is not a reasonable probability that the Government would have offered Petitioner a "10-year plea," particularly considering that: (1) the Government had a strong case for all the charges in the Superseding Indictment; (2) Petitioner faced a 10-year mandatory

22

minimum on Count 2 alone that by statute had to run consecutive to any other convictions, 18 U.S.C. §§ 924(c)(1)(A)(iii); 924(c)(1)(D)(ii); and (3) the Government ultimately advocated for a 480-month above-Guidelines sentence at Petitioner's sentencing based on his attempted murder of a rival drug dealer, storage of weapons and drugs in a house with young children (including under a child's mattress), commission of crimes while on probation, and criminal history, (ECF No. 117; Sent. Tr., 25:3–5).[7]

Although the revision to § 4B1.2(a) that took effect in August 2016 was helpful to Petitioner at sentencing in that he no longer qualified as a career offender and, thus, was sentenced under a substantially lower Guidelines range, Petitioner's underlying conduct and criminal history was unchanged.  Notably, after this revision, the Government sought an above-Guidelines sentence of 480 months and this Court ultimately sentenced Petitioner well above the Guidelines range for Count 2.  Petitioner's suggestion that, due to the August 2016 revision to the Guidelines, he would have received a "10-year plea" offer is not persuasive.

Even assuming, for the sake of argument, that Keating was incorrect to predict that it would be "impossible to receive anything under 30 years," Petitioner does not indicate that he would have accepted a plea for anything over ten years and there is no evidence that the Government would have offered him a "10-year plea." (Reply at 5.)  Cf. Barnes v. United States, No. 09-cr-1053 SAS, 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) (rejecting petitioner's ineffective assistance of counsel claim under Lafler because no formal plea offer was ever made to him and "counsel had no duty to inform petitioner of any plea offer when no such offer existed"); Speed v. United States, No. 04-336, 2013 WL 416026, at *3 (S.D.N.Y. Feb. 4, 2013) (denying as "futile" petitioner's

---

[7]  It is unclear what exactly Petitioner means by a "10-year plea."  There is not a reasonable probability that the Government would have offered (or that this Court have accepted) a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) where the Government would have agreed that a 10-year sentence or similar sentencing range was the appropriate disposition of this case.  There is also not a reasonable probability that the Government would have: (1) offered Petitioner a plea in which his total Guidelines range would have been 120 months; or (2) agreed not to advocate for a sentence above 120 months.

23

motion to amend his habeas petition with the claim that he pled not guilty based on counsel's inaccurate Guidelines calculation, because "[w]ith no plea offer, it would be baseless and speculative to consider what such an offer might have contained or the length of any subsequent sentence").

Additionally, Petitioner's trial counsel strongly rejects the contention that he "insist[ed]" that Petitioner go to trial or "compelled" him to do so.  (Pet. at 13; see also ECF No. 141-1 ¶ 6.) In an affidavit submitted to this Court, Keating affirms that he advised Petitioner "of the Sentencing Guidelines applicable to his case; the advantages under the Guidelines in pleading guilty, and the significant evidence Chandler faced at trial." (ECF No. 141-1 ¶ 6.)  Petitioner's claim that Keating "insist[ed]" that Petitioner go to trial is contradicted by Keating's affidavit and is supported by nothing more than Petitioner's conclusory statement.

Accordingly, Petitioner has not shown that his counsel failed to procure, negotiate, or relay to him a viable plea that "would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164.

## C. **Motion for Discovery**

The Court also denies Petitioner's motion for discovery. (ECF No. 145.)  In a § 2255 proceeding, discovery is available only for good cause.  Lewal v. United States, 152 F.3d 919 (2d Cir. 1998); United States v. Amirouche, 748 F. Supp. 3d 110, 135 (E.D.N.Y. 2024). Nothing in Petitioner's motion raises any reasonable likelihood that the discovery sought might contain any evidence that could affect this Court's disposition of his claims.  Accordingly, there is no good cause for discovery and the motion is denied.

## IV.    CONCLUSION

For the foregoing reasons, the habeas petition, (ECF No. 136), is denied in its entirety. Petitioner's request for discovery, (ECF No. 145), is also denied.[8]  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.  See 28 U.S.C. § 2253(c).  The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

Dated:    July 10, 2026
              Central Islip, New York

                                                          /s/ JMA
                                                          JOAN M. AZRACK
                                                          UNITED STATES DISTRICT JUDGE

---

[8] Additionally, the Court is in receipt of Petitioner's letter requesting that the Court assist him in getting the gang affiliation removed from his file with the Federal Board of Prisons.  (See ECF No. 147.)  His letter appears to refer to a gang disassociation program operated by the Board of Prisons, in which this Court has no role.